UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Ivan Bolobanic

    v.                                   Civil No. 11-cv-441-PB

Michael J. Astrue, Commissioner,
Social Security Administration


## REPORT AND RECOMMENDATION


Pursuant to 42 U.S.C. § 405(g), Ivan Bolobanic moves to reverse the Commissioner's decision denying his application for Social Security disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423.  The Commissioner, in turn, moves for an order affirming his decision.  For the reasons that follow, I recommend that this matter be remanded to the Commissioner for further proceedings consistent with this report and recommendation.


### Standard of Review

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon
> the pleadings and transcript of the record, a judgment
> affirming, modifying, or reversing the decision of the
> Commissioner of Social Security, with or without
> remanding the cause for a rehearing.  The findings of
> the Commissioner of Social Security as to any fact, if

>       supported by substantial evidence, shall be conclusive
>       . . . .

42 U.S.C. § 405(g).  However, the court "must uphold a denial of

social security disability benefits unless 'the [Commissioner]

has committed a legal or factual error in evaluating a

particular claim.'"  Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15,

16 (1st Cir. 1996) (quoting Sullivan v. Hudson, 490 U.S. 877,

885 (1989)).

As for the statutory requirement that the Commissioner's

findings of fact be supported by substantial evidence, "[t]he

substantial evidence test applies not only to findings of basic

evidentiary facts, but also to inferences and conclusions drawn

from such facts."  Alexandrou v. Sullivan, 764 F. Supp. 916,

917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727,

730 (2d Cir. 1966)).  In turn, "[s]ubstantial evidence is 'more

than [a] mere scintilla.  It means such relevant evidence as a

reasonable mind might accept as adequate to support a

conclusion.'"  Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st

Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401

(1971)).  But, "[i]t is the responsibility of the [Commissioner]

to determine issues of credibility and to draw inferences from

the record evidence.  Indeed, the resolution of conflicts in the

evidence is for the [Commissioner], not the courts."  Irlanda

Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991)

(citations omitted).  Moreover, the court "must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."  Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988).  Finally, when determining whether a decision of the Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole."  Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

### Background

The parties have submitted a Joint Statement of Material Facts, document no. 12.  That statement is part of the court's record and will be summarized here, rather than repeated in full.

Bolobanic has past relevant work as a cabinetmaker, as a cleaner, and as a laborer.  In about 1995, he was hit by an automobile while riding a bicycle.

Diagnostic imaging of Bolobanic's back has revealed: multilevel degenerative disc disease, a pronounced eccentric disc bulge at the L5-S1 level, varying degrees of neural foraminal stenosis bilaterally, a mild disc bulge at L3-4 with facet arthropathy, a bulge at L4-5 that causes spinal stenosis, and a bulge at L5-S1 with subsequent extrusion of the disc into

3

the canal causing foraminal narrowing on the left more than the right.  His relevant diagnoses include bilateral sacroiliac joint dysfunction, sacroiliitis and lumbar facet arthropathy. Bolobanic has utilized various forms of treatment for his back condition including epidural bilateral sacroiliac and facet joint injections, approximately monthly, from June of 2008 through January of 2011; other types of medication; exercise; stretching; and the application of heat and ice.

In November of 2009, Physician's Assistant Christopher Clough of Paincare Centers of Somersworth, who had been treating Bolobanic since May of 2008, completed Lumbar Spine Residual Functional Capacity ("RFC") Questionnaire on Bolobanic.  See Tr. 750-54.  That Questionnaire was also signed by Dr. Michael O'Connell, identified on the form as Clough's "Supervising Physician."  Tr. 754.  Based on a diagnosis of lower back pain and bulging discs, from which Clough opined Bolobanic would not recover, Clough indicated that Bolobanic's "experience of pain or other symptoms [would be] severe enough to interfere with **attention and concentration** needed to perform even simple work tasks" either "frequently" or "constantly" during a typical workday.  Tr. 751 (emphasis in the original).  Clough also stated opinions on Bolobanic's exertional, postural, and manipulative limitations.  Finally, Clough opined that Bolobanic

was likely to be absent from work more than four days per month as a result of his impairment or treatment for that impairment.

After considering Clough's opinions and other evidence, and conducting a hearing, the ALJ initially found that Bolobanic had "the residual functional capacity to perform the full range of light work." Tr. 91. Based on that finding, the ALJ determined that Bolobanic was not disabled. On appeal, the Disability Review Board ("DRB") remanded. See Tr. 100-02. In so doing, the DRB indicated that further consideration of Bolobanic's RFC was warranted. It also faulted the ALJ for failing to describe the weight he gave to the Clough/O'Connell opinion and for failing to give adequate reasons for rejecting it. In addition, the DRB directed the ALJ to

> Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide [a] rationale with specific references to evidence of record in support of [the] assessed limitations. . . . further evaluate the treating and other medical source opinions . . . and explain the weight given to such opinion evidence.
>
> Obtain medical expert evidence, preferably from a specialist in an area such as pain care, orthopedics or physiatry, to clarify the nature and severity of the claimant's physical impairments and to provide a medical source statement of his corresponding limitations on work-related physical activities. . . .
>
> If warranted by the expanded record, obtain supplemental evidence from a vocational expert . . . .

Tr. 101.

At Bolobanic's second hearing, the ALJ heard testimony from Dr. William Fuchs, a board-certified orthopedic surgeon.  Dr. Fuchs indicated that Bolobanic's diagnoses were bilateral tenosynovitis in the index and middle fingers and bilateral sacroiliitis.  When asked about Bolobanic's functional limitations, Dr. Fuchs responded: "His physical limitations would be heavy repetitive bending, lifting, pushing and pulling; squatting would be difficult and again, repetitive fine grasping would be difficult for the gentleman."  Tr. 70.  The ALJ then asked Dr. Fuchs whether he agreed or disagreed with the opinions expressed in the Clough/O'Connell Lumber Spine RFC Questionnaire.  More specifically, the ALJ asked Dr. Fuchs whether he agreed with Clough's determinations that Bolobanic could only walk five blocks and could only sit for forty-five minutes.  The ALJ also asked about postural and manipulative limitations.  He did not, however, ask Dr. Fuchs what he thought about Clough's finding that Bolobanic's attention and concentration would be impaired frequently, if not constantly, by his symptoms.

Bolobanic's counsel, however, did address that issue with Dr. Fuchs, in the following exchange:

> Q  Would you expect this [back] condition to
> cause pain in the patient?

6

A  The production of pain is certainly . . .
possible, but we clearly know that the x-ray itself
cannot clearly predict what the clinical symptoms will
be because you know people without significant x-ray
findings can have tremendous clinical findings [and]
patients with significant x-ray findings [may be]
asymptomatic.

You need both factors but the mere presence of
changes on x-rays cannot clearly indicate what the
problem will be.

Q  So of course you have seen that he's undergone
a number of epidural steroid injections [and] that his
treating sources at Pain Care . . . it appears have
felt that he has been experiencing a high level [of]
pain, you would disagree with their determination that
that's the case?

A  No I would not disagree with them that they're
saying he has pain.  I would agree with them in that
situation, yes.

Q  So to the extent that Dr. O'Connell has
indicated in the original questionnaire that we were
talking about at 17F, he indicated that he felt that
the claimant['] s experience of pain or other symptoms
were severe enough to frequently interfere with his
attention and concentration needed to perform simple
work tasks, you would disagree with that?

A  Well, I think if he's taking every medication
that may have an effect and everyone reacts
differently to the amount of pain they're experiencing
so if he says that would totally interfere that may be
a reasonable statement; but I'm just saying my review
of the medical records does not show significant
objective findings in the neurological status
including in activities.

Q  Okay well I just want to as you know Dr.
O'Connell and his office has been treating the
claimant for quite some time now.  You don't disagree
that perhaps they believe that the claimant is
experiencing high levels of pain otherwise why would
they be prescribing pain medications and doing

epidural steroid injections and sacroiliac joint
injections during this entire period of time, is that
right?

> A  Right.  <u>I would not disagree with their
position that they think he is experiencing
significant pain</u>.

> Q  Okay but it's your opinion that he's not
experiencing—

> A  No I'm just saying the records do not show
objective findings in the neurological symptoms to
preclude him from doing activities, <u>but as far as
whether he is experiencing pain I would have to refer
to the treating physician</u>.  He's there.

Tr. 76-78 (emphasis added).

The ALJ next heard from a vocational expert ("VE") who

testified that a person with the physical limitations described

by Dr. Fuchs could not perform Bolobanic's prior work, but could

perform several other jobs.  Then Bolobanic's attorney

questioned the VE, as follows:

> Q  Mr. Steinberg, in regard to the claimant[']s
> experience of pain rather symptoms if we [add] to that
> hypothetical that the symptoms or pain would
> frequently to constantly interfere with the
> individual's attention [and] concentration needed to
> perform even simple work tasks, how would that
> [a]ffect the jobs that you've found?

> A  If concentration was impaired for that degree
> of time, there would be no jobs that he could perform.

Tr. 80-81.

After Bolobanic's second hearing, the ALJ issued a decision
that includes the following relevant findings of fact and
conclusions of law:

> 3.  The claimant has the following severe impairments:
> sacroiilitis [sic] (bilateral) with neural foraminal
> stenosis at L4-5 and bilateral stenosing tenosynovitis
> of the index and middle fingers (20 CFR 404.1520(c)).
>
> . . . .
>
> 4.  The claimant does not have an impairment or
> combination of impairments that meets or medically
> equals one of the listed impairments in 20 CFR Part
> 404, Subpart P, Appendix 1 (20 CFR 404.1520(d),
> 404.1525 and 404.1526).
>
> . . . .
>
> 5.  After careful consideration of the entire record,
> the undersigned finds that the claimant has the
> residual functional capacity to perform light work as
> defined in 20 CFR 404.1567(b) except the claimant
> requires the opportunity to alternate sitting and
> standing at will during an 8-hour work day.  He can
> frequently handle, grasp and perform fine
> manipulations with no reaching limitations, but he
> should be limited to moderate force with regard to
> grasping and turning and handling objects weighing no
> more than 20 pounds.
>
> . . . .
>
> 6.  The claimant is unable to perform any past
> relevant work (20 CFR 404.1565).
>
> . . . .
>
> 10.  Considering the claimant's age, education, work
> experience, and residual functional capacity, there
> are jobs that exist in significant numbers in the
> national economy that the claimant can perform (20 CFR
> 404.1569 and 404.1569(a)).

Tr. 14, 18, 19, 22.  Based on the testimony of the VE, the ALJ determined that Bolobanic could work as an office helper, as an office mail clerk, and as a storage-facility rental clerk.

### Discussion

According to Bolobanic, the ALJ's decision should be reversed, and the case remanded, because the ALJ ascribed him an RFC that is not supported by substantial evidence and failed to consider his award benefits from the New Hampshire Department of Health and Human Services ("NH HHS") in the form of aid to the permanently and totally disabled ("APTD").

A. The Legal Framework

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability.  42 U.S.C. §§ 423(a)(1)(A)-(D).  The only question in this case is whether Bolobanic was under a disability.

For the purpose of determining eligibility for disability insurance benefits,

> [t]he term "disability" means . . . inability to
> engage in any substantial gainful activity by reason
> of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).  Moreover,

> [a]n individual shall be determined to be under a
> disability only if his physical or mental impairment
> or impairments are of such severity that he is not
> only unable to do his previous work but cannot,
> considering his age, education, and work experience,
> engage in any other kind of substantial gainful work
> which exists in the national economy, regardless of
> whether such work exists in the immediate area in
> which he lives, or whether a specific job vacancy
> exists for him, or whether he would be hired if he
> applied for work.  For purposes of the preceding
> sentence (with respect to any individual), "work which
> exists in the national economy" means work which
> exists in significant numbers either in the region
> where such individual lives or in several regions of
> the country.

42 U.S.C. § 423(d)(2)(A).

To decide whether a claimant is disabled for the purpose of determining eligibility for disability insurance benefits, an ALJ is required to employ a five-step process.  See 20 C.F.R. § 404.1520.

> The steps are: 1) if the [claimant] is engaged in
> substantial gainful work activity, the application is
> denied; 2) if the [claimant] does not have, or has not
> had within the relevant time period, a severe
> impairment or combination of impairments, the
> application is denied; 3) if the impairment meets the
> conditions for one of the "listed" impairments in the
> Social Security regulations, then the application is
> granted; 4) if the [claimant's] "residual functional
> capacity" is such that he or she can still perform
> past relevant work, then the application is denied; 5)
> if the [claimant], given his or her residual
> functional capacity, education, work experience, and
> age, is unable to do any other work, the application
> is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20

C.F.R. § 416.920, which outlines the same five-step process as

the one prescribed in 20 C.F.R. § 404.1520).

     The claimant bears the burden of proving that he is

disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  He

must do so by a preponderance of the evidence.  See Mandziej v.

Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v.

Schweiker, 530 F. Supp. 808, 810-11) (D. Mass. 1982)).  Finally,

> [i]n assessing a disability claim, the [Commissioner]
> considers objective and subjective factors, including:
> (1) objective medical facts; (2) [claimant]'s
> subjective claims of pain and disability as supported
> by the testimony of the claimant or other witness; and
> (3) the [claimant]'s educational background, age, and
> work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797

F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690

F.2d 5, 6 (1st Cir. 1982)).

     B. Bolobanic's Arguments

     Bolobanic argues that the ALJ's RFC assessment was not

supported by substantial evidence because the ALJ: (1)

improperly discounted Clough's opinion concerning pain-based

limitations on his capacity for attention and concentration; and

(2) failed to properly assess his subjective complaints.

Bolobanic also argues that the ALJ erred by failing to properly

consider his award of APTD benefits from NH HHS.  Bolobanic's
first argument is persuasive and dispositive.

### 1. Consideration of Clough's Opinion

Bolobanic first argues that the ALJ erred in his
consideration of Clough's opinion that his experience of pain
was frequently or consistently severe enough to interfere with
his ability to maintain the attention and concentration
necessary to perform even simple work tasks.  Among other
things, Bolobanic: (1) asserts that Dr. Fuchs actually agreed
with Clough's opinion; (2) characterizes the ALJ as rejecting
Clough's opinion "primarily because he is not an acceptable
medical source, and [because] his opinion was not supported by
another physician in the office, Dr. Schermerhorn," Cl.'s Mem.
of Law (doc. no. 9-1), at 7; (3) contends that the ALJ failed to
properly apply Social Security Ruling ("SSR") 06-03p, 71 Fed.
Reg. 45593-03 (Aug. 9, 2006), 2006 WL 2329939; and (4)
criticizes the ALJ for discounting Clough's opinion in reliance
on a statement in an office note from June of 2008.[1]

In response, the Commissioner argues that: (1) Clough is
not an acceptable medical source, which gave the ALJ wide

---

[1] Based on the court's reading of the ALJ's decision, it
appears that the ALJ discussed the June, 2008, office note in
the context of his credibility assessment, not in the context of
his assessment of the medical opinion evidence.

latitude in assessing his opinion; (2) the ALJ correctly gave
Clough's opinion little weight because it was inconsistent with
Dr. Schermerhorn's clinical observations; (3) Dr. O'Connell's
signature on Clough's RFC Questionnaire does not give that
Questionnaire any additional weight in the absence of a
treatment relationship; (4) Dr. Fuchs did not agree with
Clough's opinion; and (5) the ALJ relied on other evidence,
i.e., opinions from a consultative examining psychologist (Dr.
Thomas Lynch) and a state-agency psychologist (Dr. Patricia
Rice), to determine that Bolobanic retained a sufficient
capacity for attention and concentration to perform basic,
remunerative unskilled work.

The court begins by turning to the paragraph in the ALJ's
decision devoted to assessing the opinion evidence.  In it, the
ALJ focused on two separate opinions, those expressed in: (1) a
letter Clough wrote in August of 2009, "to whom it may concern,"
Tr. 729 (the August opinion), stating that as a result of
chronic pain conditions,[2] Bolobanic was "unable to work at all,"
id.; and (2) the Lumbar Spine RFC Questionnaire Clough completed
in November of 2009 (the November opinion), which includes
Clough's opinion on Bolobanic's capacity for attention and

---

[2] Clough identified Bolobanic's chronic pain conditions as
"Low back pain, chronic, lumbar radiculopathy, L3-S1 bulge and
Sacroiliitis."  Tr. 729

14

concentration. The ALJ gave little weight to the August opinion because: (1) it was written in the context of Bolobanic's application for benefits from the State of New Hampshire; (2) Clough was not an acceptable medical source; and (3) the opinion was not supported by Dr. Schermerhorn's clinical observations. With regard to the November opinion, the ALJ wrote:

> PA-C Clough signed a Lumbar Spine Residual Functional Capacity Questionnaire indicating that the claimant had various limitations including an inability to stand and walk for even 2 hours total during the day. This document is co-signed by Dr. O'Connell who is described as a "Supervising Physician"; however, there is no evidence that the claimant was ever seen or evaluated by a Dr. O'Connell at any time relevant to this decision. Nor is there any evidence that Dr. O'Connell reviewed the medical record in this case. Accordingly, the undersigned affords little weight to the opinion.

Tr. 21 (citations to the record omitted).

Several aspects of the ALJ's consideration of the November opinion are noteworthy. First, while the ALJ mentioned Clough's opinion on Bolobanic's capacities for standing and walking, he said nothing about the opinion on which Bolobanic seeks to rely, i.e., Clough's opinion on his capacities for attention and concentration. That omission is especially glaring in light of the fact that Bolobanic's second hearing concluded with the VE's testimony that, under the limitation on attention and concentration posited by Clough, there would be no jobs that Bolobanic could perform.

15

Second, despite having been expressly directed by the DRB to "further evaluate the . . . other medical source opinions pursuant to the provisions of 20 CFR § 404.1527 and Social Security Ruling[ ] . . . 06-3p," Tr. 101, and despite his boilerplate declaration that he had done so, see Tr. 91, the ALJ did not mention any of the factors described in § 404.1527 or SSR 06-03p in his discussion of the November opinion.  Rather, the only reason the ALJ gave for affording little weight to that opinion is the lack of evidence that Dr. O'Connell had treated Bolobanic or reviewed his treatment records.  Thus, the ALJ said nothing about: (1) how long Clough had known Bolobanic,[3] and how frequently he had seen him;[4] (2) how consistent Clough's opinion was with other evidence; (3) the degree to which Clough presented evidence to support his opinion; (4) how well he explained his opinion; or (5) whether Clough had an area of expertise related to Bolobanic's impairment.[5]  See SSR 06-03p, 71 Fed. Reg. at 45595.

---

[3] At the time he rendered his opinion, Clough had known Bolobanic for approximately eighteen months.  See Tr. 612.

[4] At the time he rendered his opinion, Clough had seen Bolobanic approximately thirty times.

[5] Clough, who offered an opinion on the effects of pain on Bolobanic's capacities for attention and concentration, worked as a physician's assistant in a medical practice devoted to pain management.

16

Third, contrary to the Commissioner's argument, the ALJ did not give the November opinion little weight because it was inconsistent with Dr. Schermerhorn's clinical observations; he gave little weight to the August opinion because it was not supported by Dr. Schermerhorn's observations.[6]  Similarly, the ALJ did not rely on the opinions of Drs. Lynch or Salt to support his decision to give little weight to Clough's opinion. Rather, the ALJ mentioned the opinions of Drs. Lynch and Salt in his discussion of whether Bolobanic had a mental impairment that met or equaled a listing.  Even if those opinions, on which the ALJ relied at step two, might also support his RFC assessment, the ALJ did not identify those opinions in his RFC discussion, which bars the court from adopting the Commissioner's argument on this point.  See Polanco-Quinones v. Astrue, No. 11-1618, 2012 WL 1502725, at *1 (1st Cir. May 1, 2012) (per curiam); Larlee v. Astrue, 694 F. Supp. 2d 80, 84 (D. Mass. 2010) ("Neither the Commissioner nor the reviewing judge may provide post hoc rationale to support an ALJ's decision.").

So, here is where things stand.  Clough, a physician's assistant in a pain clinic, who had seen Bolobanic nearly thirty times in eighteen months to treat him for pain, offered the

---

[6] Moreover, while the ALJ says that the August opinion is not supported by Dr. Schermerhorn's clinical observations, he does not develop that idea any more specifically.

opinion that Bolobanic did not have the capacities for attention and concentration necessary for even simple work tasks, due to his experience of pain.  At Bolobanic's second hearing, Dr. Fuchs "would not disagree with [Clough's] position that [he thought Bolobanic was] experiencing significant pain," Tr. 77, and further testified that "as far as whether [Bolobanic] is experiencing pain, [he] would have to refer to the treating physician," Tr. 78.[7]  Thus, while the ALJ gave Clough's opinion little weight, he identified no contrary opinion, to which he gave greater weight, to the effect that Bolobanic's attention and concentration were sufficient to meet the demands of any kind of work.  Because an opinion given little weight still weighs more than no opinion at all, the court concludes that the ALJ's RFC assessment is not supported by substantial evidence. For that reason, this case should be remanded for an adequate RFC assessment, i.e., one in which Clough's opinion is evaluated under the applicable criteria and properly weighed.

### 2. Other Issues on Remand

Because this court recommends remanding this case for an adequate RFC assessment, there is no need to address Bolobanic's

---

[7] While the Commissioner is technically correct in asserting that Dr. Fuchs did not agree with Clough's opinion, he certainly did not disagree with it and, in fact, deferred to it.  As a logical matter, deference to Clough's opinion falls far closer to agreement with it than to disagreement with it.

remaining arguments.  However, for the guidance of both the ALJ and Bolobanic on remand, the court offers the following brief observations.

Bolobanic argues that the ALJ erred by failing to properly assess the credibility of his statements about pain.  Without engaging in a full-scale analysis based on SSR 96-7p, and the Avery factors, see 797 F.2d at 29, the ALJ's discussion of his credibility assessment would benefit from some additional precision.  That is, the ALJ should take care to identify one or more particular statements, see Weaver v. Astrue, No. 10-cv-340-SM, 2011 WL 2580766, at *6 (D.N.H. May 25, 2011) ("As a starting point for the following [credibility] analysis, it is necessary to identify the statement(s) at issue."), and then explain why each of those statements is not credible, based upon the Avery factors, see id. (citing SSR 96-7p, 1996 WL 374186, at *2 (S.S.A. 1996)).

When doing so, the ALJ should bear in mind that the lack of objective medical evidence supporting a claimant's statements about symptoms is not a basis for finding the claimant's statements to lack credibility.  Rather, "[t]he lack of objective medical evidence supporting a claimant's statement about [his or] her symptoms is what triggers an ALJ's obligation to conduct a credibility assessment, not evidence that the

claimant's statements lack credibility." Clavette v. Astrue,
No. 10-cv-580-JL, 2012 WL 472757, at *9 (D.N.H. Feb. 7, 2012)
(citing Guziewicz v. Astrue, No. 10-cv-310-SM, 2011 WL 128957,
at *6 (D.N.H. Jan. 14, 2011) ("If, indeed, the ALJ used the lack
of objective medical evidence as his basis for finding [the
claimant] to be not entirely credible, rather than treating such
a finding as compelling him to conduct a credibility assessment,
that constitutes legal error on the ALJ's part.")).

Finally, Bolobanic argues that the ALJ erred by failing to
consider the award of APTD benefits he received from NH HHS.
The Commissioner contends that the ALJ did consider Bolobanic's
state benefits.  The ALJ did acknowledge that Bolobanic had been
awarded APTD benefits, but based on what he wrote in his
decision, it would be a bit of a stretch to say that he actually
considered either: (1) the fact that Bolobanic had been awarded
those benefits; or (2) the basis on which those benefits had
been awarded.  In any event, the ALJ did not explain why
Bolobanic's award of APTD benefits was not relevant to
determining whether he was disabled for the purpose of
qualifying for Social Security benefits.  Still, the court notes
that while "it may be good practice to explain why contrary
state agency determinations were not followed, merely ignoring
an administrative conclusion is not error per se."  Dube v.

20

Astrue, 781 F. Supp. 2d 27, 37 n.16 (D.N.H. 2011) (citing Evans
v. Barnhart, No. Civ. 02-549-M, 2003 WL 22871698, at *6 (D.N.H.
Dec. 4, 2003); Boulet v. Cellucci, 107 F. Supp. 2d 61, 73 (D.
Mass. 2000)).

## Conclusion

For the reasons given, I recommend that: (1) the
Commissioner's motion for an order affirming his decision,
document no. 10, be denied; and (2) Bolobanic's motion to
reverse the decision of the commissioner, document no. 9, be
granted to the extent that the case is remanded to the
Commissioner for further proceedings, pursuant to sentence four
of 42 U.S.C. § 405(g).

Any objections to this report and recommendation must be
filed within fourteen days of receipt of this notice.  See Fed.
R. Civ. P. 72(b)(2).  Failure to file objections within the
specified time waives the right to appeal the district court's
order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57
(1st Cir. 2011), cert. denied, 132 S. Ct. 1045 (2012); Sch.
Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st
Cir. 2010) (only issues fairly raised by objections to
magistrate judge's report are subject to review by district

court; issues not preserved by such objection are precluded on appeal).

_____
Landya McCafferty
United States Magistrate Judge


May 21, 2012

cc:  D. Lance Tillinghast, Esq.
     Gretchen Leah Witt, Esq.